NOT FOR PUBLICATION                                               (Doc. Nos. 41, 43, & 45)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

_____

WILLIAM E. STARKEY, et al.

    Plaintiffs,

    v.

UNITED STATES OF AMERICA, et al.,

    Defendants.
_____

Civil No. 08-3938 (RBK/KMW)

**OPINION**

**KUGLER**, United States District Judge:

Plaintiff was injured when he climbed atop, walked along, and fell off a retaining wall at the United States Post Office in Bellmawr, New Jersey. Plaintiff claims that he fell because a cap stone on the retaining wall broke free when he stepped on it. He sued the United States of America and the construction companies that built the wall for negligence. The United States of America and the construction companies now move for summary judgment dismissing Plaintiff's claims. The Court grants Defendants' motions for summary judgment because neither the United States nor the construction companies had a duty to maintain or construct the retaining wall as a safe walkway. The design and presentation of the retaining wall unequivocally establish that it was not a walkway, and there is no evidence that anyone other than Plaintiff ever used the wall as a walkway. Plaintiff presents no evidence to support his claim that Defendants should be liable for his curious decision to walk along the eight-inch wide, terraced retaining wall rather than use the twelve-foot wide, hand-rail equipped sidewalk immediately adjacent to the retaining wall.

1

I.      BACKGROUND

Plaintiff's accident occurred in September 2007.  At that time, he was almost 65 years old, approximately 6'3" tall, and weighed approximately 245 pounds.  Because of a physically disabling automobile accident in 1991, Plaintiff walked with a cane.  He also suffered from gout, which required daily medication so that he could walk, and wore a brace on his left leg to compensate for "foot drop," which is a condition affecting the mobility of the ankle and toes.

On September 8, 2007, Plaintiff and his wife drove to the Bellmawr Post Office (the "Post Office") to drop off a bulk mailing.  They parked on the right side of the building closest to the Bulk Mail Entry Unit.  After delivering his bulk mailing, Plaintiff exited the Bulk Mail Entry Unit and walked to the front of the building to the Retail Unit to pay for the postage.  A twelve-foot wide sidewalk connects the Bulk Mail Entry Unit to the Retail Unit.  Plaintiff does not dispute that the sidewalk is obvious and that on the day of the accident there were no obstructions, holes, or defects on the sidewalk.  (Starkey Dep. 54:18-55:3).  Photographs of the sidewalk show that it contains a series of handrails and its boundaries are clearly framed by adjacent retaining walls and a curb separating the sidewalk from the parking lot.  (Decl. of G. Christopher Bally, Esq. in Supp. of Def. Medio Construction Co., Inc.'s Mot. for Sum. J., Ex. 2).

Plaintiff initially walked along the sidewalk.  However, at some point before reaching the Retail Unit, he decided to climb atop one of the adjacent retaining walls.  Plaintiff admits that he did not depart from the sidewalk because of any obstructions or defects.  (Starkey Dep. 54:18-55:3).  When asked why he got on to the retaining wall, he testified:  "Why? I just stepped up on it.  Why, I don't know." (Starkey Dep. 56:11-16).  However, Plaintiff also testified that he used the retaining wall rather than the sidewalk to save time.  (Starkey Dep. 114:24-115:7).  He testified that on other occasions he would use part of the retaining wall and a dirt area behind the

retaining wall as a shortcut for entering the Bulk Mail Entry Unit. (Starkey Dep. 57:8-12). No Postal Service employee ever saw Plaintiff use the retaining wall or the dirt area behind the retaining wall as a shortcut. Moreover, prior to Plaintiff's accident: (1) the Postal Service had not received any reports of persons walking on the wall; (2) Florence Wernig, the Supervisor of Maintenance Operations responsible for maintaining the Post Office, never saw anyone walking on the retaining wall; and (3) the Postal Service had not received any complaints that anyone fell off the wall.

As Plaintiff walked along the retaining wall on the day of his accident, he came to a terraced section of the wall. He attempted to step up the terraced section by standing on the cap stone at the very edge of the terrace. According to Plaintiff, the cap stone came loose when he put his weight on it, causing him to fall off the wall. (Starkey Dep. 62:14-25). Plaintiff broke his elbow and sustained other injuries as a result of the fall. Plaintiff immediately reported the accident to the clerk at the Bulk Mail Entry Unit. He could not identify any witnesses to his fall.

Plaintiff claims that "he believed [the wall] was an acceptable walking surface because [he] walked on it before and no one said that [he] couldn't walk on it . . . [and] [t]here is no signage to say keep off the wall, keep off the dirt, only use the sidewalk." (Starkey Dep. 119:13-19). According to William Kapac, who was the project manager for the Postal Service responsible for constructing the wall, the wall was designed to keep debris from running onto the sidewalk and becoming a hazard. (Kapac Dep. 62:7-19). The wall is capped by eight-inch wide "decorative" bricks. (Starkey Dep. 61:6-9). The decorative cap stones are fastened to the wall with mortar and are not designed to be a walking surface.

The Postal Service has strict procedures designed to ensure safe ingress and egress to the Post Office. Every day, the area in front of the Retail Unit is maintained by a custodian.

Additionally, Ms. Wernig personally inspects that area for safety issues at least three times per week. Ms. Wernig did not notice any safety issues with the retaining wall or the sidewalk prior to Plaintiff's accident. (Wernig Dep. 8:4-5). The Post Office also undergoes a quarterly comprehensive safety and health inspection, which includes a rigorous inspection of the outside of the building for hazardous conditions. The quarterly inspections are conducted by Ms. Wernig, a safety specialist, and members of the respective postal unions. Those inspections include an examination of the retaining wall. None of the quarterly inspections prior to Plaintiff's accident revealed any defects or hazardous conditions with the wall.

After Plaintiff's fall, he filed an administrative claim for negligence with the United States Postal Service. He alleged that he was injured because "the cap block on top of the wall gave way." (Decl. of Elizabeth A. Pascal in Supp. of Def. U.S. Mot. for Sum. J., Ex. 10). The Postal Service denied Plaintiff's claim, finding that it had not committed any wrongful or negligent act or omission.

Plaintiff filed the Complaint in August 2008. He sued the United States for negligence under the Federal Tort Claims Act ("FTCA").[1] Plaintiff subsequently amended his Complaint to assert negligence claims against Defendants Franchi Construction, Inc. ("Franchi") and Medio Construction Company ("Medio"). Franchi was the contractor that the Postal Service hired to complete renovations to the front of the Post Office, including the retaining wall. Medio was the subcontractor that Franchi hired to build the retaining wall. According to both Medio and Franchi, the retaining wall was not designed or intended to be used as a walkway. Upon

---

[1] Plaintiff and his wife originally sued the United States for negligence and loss of consortium. However, Plaintiff voluntarily dismissed his wife as a named plaintiff and dismissed her consortium claim because she failed to exhaust administrative remedies as required by the FTCA.

completion of the wall sometime in 2004 or 2005,[2] the Postal Service inspected, approved, and paid for the wall. Neither Medio nor Franchi had any agreements with the United States to perform continuing maintenance or inspection of the retaining wall after its construction.

All three Defendants now move for summary judgment dismissing Plaintiff's negligence claims against them. The United States makes four arguments in favor of summary judgment: (1) the United States is not liable for Plaintiff's injuries because Plaintiff was beyond the scope of his invitation when he walked on the retaining wall and fell; (2) Plaintiff cannot establish that the retaining wall was a dangerous condition against which the United States had a duty to protect Plaintiff; (3) Plaintiff cannot establish that the United States knew or should have known about the retaining wall's allegedly hazardous condition; and (4) the United States did not have a duty to warn Plaintiff of the obvious danger attendant to walking atop an eight-inch wide retaining wall. Franchi and Medio reiterate the United States' arguments and further argue that there is no evidence that they negligently constructed the retaining wall more than two years before Plaintiff's accident or that they had a continuing duty to inspect and maintain the wall.

Plaintiff essentially concedes all three Defendants' factual assertions in support of their respective motions for summary judgment. He does not contest any of the United States' evidence or factual assertions.[3] He admits all but one of Franchi's factual allegations.[4]

---

[2] The evidence is unclear as to when the wall was ultimately finished. The Postal Service contracted with Franchi in November 2004. A representative for Medio certified that "many years ago" its work was "completed properly, inspected, approved, and paid for." (Decl. of G. Christopher Bally, Esq. in Supp. of Def. Medio Construction Co., Inc's Mot. for Sum. J., Ex. 8).

[3] As required by Local Rule 56.1, the United States submits a statement of facts in support of its motion for summary judgment that contains citations to evidence. In response to the United States' statement, Plaintiff concedes: "The plaintiff adopts the Statement of Facts set forth in the Motion for Summary Judgment by defendant, United States of America and the Exhibit s [sic] attached should be assumed to be attached hereto as if more fully set forth." (Pl's Br. in Opp. to Def. U.S. Mot. for Sum. J., at 2). Thus, pursuant to Local Rule 56.1, Plaintiff admits that there are no material issues of fact regarding the United States' statement of facts submitted in support of its motion for summary judgment. See Hill v. Algor, 85 F. Supp. 2d 391, 408 n. 26 (D.N.J. 2000) ("facts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted.").

Regarding Medio's statement of facts, Plaintiff states: "The defendant's argument is correct as to the facts it alleges to be true." (Pl's Br. in Opp. to Def. Medio's Mot. for Sum. J., at 2). Plaintiff nevertheless asserts that, "in the depositions there is sufficient factual basis for a jury to decide that Medio did not properly attach the caps." (Id.). However, Plaintiff does not cite or attach any deposition testimony or evidence in support of that assertion.

Plaintiff advances two arguments in opposition to Defendants' motions: (1) the United States had a duty to maintain the retaining wall as a safe walkway because its location "tempt[s]" people to walk along it; and (2) at the very least, the United States had a duty to post signs warning people not to walk atop the wall. (Pl's Br. in Opp. to Def. U.S. Mot. for Sum. J., at 3).

## II.  LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if the evidence is such that a reasonable jury could find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, the Court is not to make credibility determinations regarding witness testimony. Sunoco, Inc. v. MX Wholesale Fuel Corp., 565 F. Supp. 2d 572, 575 (D.N.J. 2008). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

---

[4] As required by Local Rule 56.1, Franchi provides eleven numbered paragraphs with factual assertions followed by citations to evidence. (Franchi's Br. in Supp. of Mot. For Sum. J., at 2-3). In response, Plaintiff asserts that paragraphs 1-10 are "True." (Pl's Br. in Opp. to Def. Franchi's Mot. for Sum. J., at 2). Plaintiff does not provide any counterstatement of facts or cite to any conflicting evidence. Paragraph 11 of Franchi's statement of facts provides: "The United States Postal Service never received any reports or observed people walking on the wall." (Franchi's Br. in Supp. of Mot. For Sum. J., at 3) (citation to the record omitted). Plaintiff responds to this statement by asserting: "None except the Plaintiffs [sic]." (Pl's Br. in Opp. to Def. Franchi's Mot. for Sum. J., at 2).

However, to defeat a motion for summary judgment, the nonmoving party must present competent evidence that could be admissible at trial. See Stelwagon Mfg. Co. v. Tarmac Roofing Sys., 63 F.3d 1267, 1275 n.17 (3d Cir. 1995). The nonmoving party "may not rest upon the mere allegations or denials of" its pleadings and must present more than just "bare assertions, conclusory allegations or suspicions" to establish the existence of a genuine issue of material fact. Fireman's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982) (citation omitted); see Fed. R. Civ. P. 56(e). "A party's failure to make a showing that is 'sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial' mandates the entry of summary judgment." Watson v. Eastman Kodak Co., 235 F.3d 851, 857-58 (3d Cir. 2000) (quoting Celotex Corp., 477 U.S. at 322).

### III.   DISCUSSION

#### A. Plaintiff's Claims Against The United States

Plaintiff's negligence claim against the United States is governed by the FTCA. See 28 U.S.C. §§ 1346(b), 2401(b), 2671-80. The FTCA provides the exclusive remedy for alleged tortious acts or omissions of federal employees. See 28 U.S.C. § 2679. A plaintiff may recover under the FTCA only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); see Ciccarone v. United States, 486 F.2d 253, 257 (3d Cir. 1973) (a claimant may recover against the United States only to the extent that recovery would be permitted under the substantive law of the state where the conduct complained of occurred). Consequently, New Jersey law governs Plaintiff's negligence claim against the United States.

Under New Jersey law, a negligence claim requires a plaintiff to establish: (1) that the defendant owed the plaintiff a particular duty relevant to the alleged injury; (2) that defendant

7

somehow breached that duty; and (3) that the defendant's breach proximately caused the alleged injury.  Keith v. Truck Stops Corp. of Am., 909 F.2d 743, 745 (3d Cir. 1990).  In determining whether a duty exists, the Supreme Court of New Jersey applies a two-step analysis.  Olivo v. Owens-Illinois, Inc., 895 A.2d 1143, 1148-49 (N.J. 2006).  First, a plaintiff must establish that the defendant could foresee the harm to the plaintiff.  Id.  "Once the ability to foresee harm to a particular individual has been established, however, considerations of fairness and policy govern whether the imposition of a duty is warranted."  Id. at 1148.  "[W]hether imposing a duty is fair involves 'weighing, and balancing several factors – the relationship between the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution.'"  Id. at 1149 (quoting Hopkins v. Fox & Lazo Realtors, 625 A.2d 1110, 1116 (N.J. 1993)).

In premises liability cases, the scope of a defendant's duty is informed by the status of the visitor.  Filipowicz v. Diletto, 796 A.2d 296, 558 (N.J. Sup. Ct. App. Div. 2002).  "[T]ypically, visitors are categorized as licensees, or social guests; invitees, or business guests; and trespassers."[5]  Atakora v. McAuley, 2010 N.J. Super. Unpub. LEXIS 2680, at *5 (N.J. Sup. Ct. Law Div. Oct. 1, 2010) (citing Snyder v. I. Jay Realty Co., 153 A.2d 1, 5-6 (N.J. 1959).  "An invitee, in the legal sense, is 'one who is on the premises to confer some benefits upon the invitor other than purely social.'"  Filipowicz, 796 A.2d at 558 (quoting Berger v. Shapiro, 152 A.2d 20, 24 (1959)).  Business owners must provide invitees with a "reasonably safe place to do that

---

[5] The New Jersey Supreme Court applies these traditional common law classifications with "pliancy."  Olivo v. Owens-Illinois, Inc., 895 A.2d 1143, 1148 (N.J. 2006).  According to the Court, "[P]remises liability law can, and should, develop in a manner consistent with its 'fundamental purpose . . . to deter conduct that creates an unreasonable risk of injury to others.'"  Id. (quoting Kuzmicz v. Ivy Hill Apartments, Inc., 688 A.2d 1018, 1030 (N.J. 1997).  Thus, under New Jersey law, a business operator's liability does not turn exclusively on the plaintiff's status as an invitee, licensee, or trespasser.  Id.  Nevertheless, the traditional common law classifications retain traction in New Jersey premises liability law because the reasonableness of a particular risk and the fairness of imposing a duty on a business operator or landowner are informed by the "relationship of the parties."  Id. at 1149.

which is within the scope of the invitation." Butler v. Acme Markets, Inc., 445 A.2d 1141, 1143 (N.J. 1982). That duty includes the obligation to "use reasonable care to make the premises safe, including the duty to conduct a reasonable inspection to discover defective conditions." Handleman v. Cox, 187 A.2d 708, 716 (N.J. 1963). The duty also includes an obligation to provide a safe means of ingress and egress to and from the premises. Robertson v. Cousins Wholesale Produce, Inc., No. A-0515-08T22010, 2010 N.J. Super. Unpub. LEXIS 1656, at *6 (N.J. Super. Ct. App. Div. July 20, 2010).

However, "the duty to maintain a safe premises only extends to the area 'within the scope of the invitation.'" Roth v. Marina Assocs., No. 07-2596, 2009 U.S. Dist. LEXIS 70952, at *12-14 (D.N.J. Aug. 11, 2009) (quoting Butler, 445 A.2d at 1143); Tomsky v. Kaczka, 85 A.2d 809, 811-12 (N.J. Super. Ct. App. Div. 1952) ("It has been consistently held that an owner's liability for the condition of his premises is co-extensive with his invitation"). The invitation includes "those parts of the premises to which the invitee reasonably [might] be expected to go." Monheit v. Rottenberg, 685 A.2d 32, 35 (N.J. Sup. Ct. App. Div. 1996). The invitation also "extends to all parts of the premises to which the purpose may reasonably be expected to take [the invitee] and to those which are so arranged as to lead him reasonably to think that they are open him." Id. at 35. The invitation doctrine relates not only to access to particular areas on the premises but also to the manner in which invitees use those areas. See Tomsky, 85 A.2d at 812 (citing Furey v. New York C. & H. R. R. Co., 51 A. 505, 506 (N.J. 1902)). Thus, "it is incumbent upon [a] plaintiff to show not only that entry was by invitation, but also that the injuries complained of were received while in that part of the premises into which the plaintiff was entitled to enter, and was using them in a manner authorized." Id. (emphasis added).

9

The United States does not argue that Plaintiff's injury was unforeseeable. Rather, it claims that imposing a duty in this case would be unfair because Plaintiff was acting beyond the scope of the public invitation to use the premises. Specifically, the United States argues that there is no evidence suggesting that the Postal Service explicitly or implicitly invited the public to use the retaining wall as a walkway, and, therefore, it would be unfair to impose a duty on the Postal Service to maintain the wall as a safe walkway. The Court agrees. Plaintiff clearly exceeded the scope of the public invitation, and it would be patently unfair to impose a duty on the Postal Service to protect against risks associated with a use of the premises that the Postal Service neither invited nor encouraged. See Giangrasso v. Dean Floor Covering Co., 237 A.2d 866, 868 (N.J. 1968) (denying slip-and-fall claim by patron because nothing about the arrangement of the business premises suggested to patrons that they were invited to use an uncovered and unlit shortcut to enter the premises).

First, although the retaining wall is located within an area open to invitees, it is clear from the arrangement of the premises that the invitation did not include the use of the retaining wall as a walkway. Indeed, the retaining wall serves to outline the twelve-foot wide sidewalk so that it is obvious to invitees where they may safely walk. Nothing about the retaining wall suggests that it is an appropriate walkway. There are no steps providing access to the top of the wall, no hand rails running atop the wall, and no signs offering the wall as a walkway. Moreover, as Plaintiff acknowledges, the top of the wall is not covered by a walking surface, but a series of narrow "decorative" cap stones. The wall is also irregularly terraced. In short, nothing about the arrangement of the area suggests to a reasonable person that the Postal Service was offering the retaining wall to the public as a walkway. See id., 237 A.2d at 868 (denying slip-and-fall claim by patron who was injured while accessing business premises from a shortcut because

"[p]laintiff offered no evidence that defendant planned or conceived that" patrons would use the shortcut to enter the premises and "not only was there an absence of affirmative encouragement but prospective users of the [shortcut] were as well discouraged from using" it).

Plaintiff nevertheless argues that the United States is liable because the wall and sidewalk are arranged so as to "tempt" invitees to climb onto the wall. (Pl's Br. in Opp. to Def. U.S. Mot. for Sum. J., at 3). However, it is not enough to show that a particular condition on the premises suggests an obvious misuse of the facility.[6] See id., 237 A.2d at 868 (denying a premises liability claim because "all indications" from the arrangement of a business premises suggested that the area where the plaintiff fell was "not meant to be . . . used" as an access point). To establish that a plaintiff was within the reasonable scope of the invitation when injured, a plaintiff must prove that "the defendant [committed] some act or conduct signifying that the place was so prepared or adapted which might naturally lead the plaintiff to suppose that he might properly and safely use it" for a particular purpose. Furey, 51 A. at 506-07. The retaining wall at issue may tempt invitees to a variety of misuses. An adventurous child may be tempted to ride her bicycle atop the wall. A skateboarder may be tempted to "grind" the wall's edge. But these uses are no doubt beyond the reasonable scope of the invitation because the Postal Service did nothing to signal to the public that they may use the retaining wall for those activities. Similarly, the Postal Service did nothing to suggest to the public that the retaining wall was a

---

[6] Foreseeability alone does not determine whether a duty exists. Olivo, 895 A.2d at 1148. A duty to protect against foreseeable harms exists only where it is fair to impose that duty. Id. Determining the fairness of imposing a duty requires the court to examine, among other things, the "relationship of the parties." Id. Here, the parties' relationship was clearly informed by the scope of the Postal Service's invitation to the public. It would be patently unfair to require the Postal Service to protect against every foreseeable use of the premises without reference to the scope of the Postal Service's unambiguous invitation to the public, which did not include traversing the retaining wall.

walkway.[7] It would be unfair to require the Postal Service to protect against all foreseeable misuses of the premises when there is no evidence that the Post Office offered the retaining wall to the public as a walkway or knew that the public tended to use the retaining wall as a walkway.

Second, there is no evidence that anyone other than Plaintiff ever used the retaining wall as a walkway. If the Postal Service knew that patrons tended to walk across the retaining wall, it may be fair to impose a duty on the Postal Service to either post signs declaring that the wall was off-limits as a walkway or ensure that the wall was safe to walk upon. However, Plaintiff offers no evidence that the Postal Service knew that Plaintiff or any other patron used the wall as a walkway. Summary judgment is therefore appropriate because the only reasonable inference from the undisputed facts is that Plaintiff exceeded the obvious scope of the public invitation when we decided to use the wall as a walkway.

### B. Plaintiff's Claims Against Franchi And Medio

Plaintiff asserts negligence claims against Franchi and Medio based on their construction and maintenance of the retaining wall. Specifically, Plaintiff claims that Franchi and Medio negligently affixed the cap stones to the wall and failed to properly maintain the wall. The Court grants summary judgment dismissing these claims because Plaintiff presents no evidence that Franchi or Medio acted negligently.

First, neither Franchi nor Medio had a duty to construct the retaining wall as a safe walking surface. Franchi and Medio were contracted to construct the wall as a safe and effective retaining wall, not a walkway. Plaintiff presents no evidence that he was injured because the wall failed to perform as a safe and effective retaining wall. Rather, Plaintiff asserts that because

---

[7] Consequently, Plaintiff's argument that the Postal Service had a duty to post signs notifying customers that the retaining wall was not a suitable walkway fails. No such duty exists because nothing about the arrangement of the premises suggests that the retaining wall was a suitable walkway.

one of the cap stones broke free as he walked along the wall, Franchi and Medio are necessarily liable for negligently affixing the cap stones. However, it is axiomatic that "the mere happening of an accident does not alone give rise to an inference of negligence." Robertson, 2010 N.J. Super. Unpub. LEXIS 1656, at *7 (citing Vander Gfoef v. Great Atl. & Pac. Tea Co., 108 A.2d 472, 475 (N.J. Sup. Ct. App. Div. 1954). A plaintiff bears the burden of proving negligence with competent evidence. Long v. Landy, 35 N.J. 44, 54 (1961). Here, Plaintiff presents no evidence to support his claim that Franchi and Medio had a duty to construct the retaining wall as a safe walkway. The fact that Plaintiff fell off of the retaining wall suggests only that some retaining walls may not be safe walkways. It is not indicative of actionable negligence against those who built the wall.

Second, Plaintiff presents no evidence that Franchi or Medio had a continuing obligation to maintain the wall. There is no evidence that Franchi or Medio accepted or assumed any obligation to maintain or inspect the wall after its completion. Rather, the undisputed evidence shows that Franchi and Medio's work was inspected, approved and paid for. Thus, neither Franchi nor Medio had a duty to maintain the wall at the time of Plaintiff's fall. Summary judgment dismissing Plaintiff's claims against Franchi and Medio is therefore appropriate.

### IV.     CONCLUSION

For the reasons discussed above, Defendants' motions for summary judgment dismissing Plaintiff's claims are granted. An appropriate Order shall enter today.


Dated: 1/18/11                                                       /s/ Robert B. Kugler
                                                                     ROBERT B. KUGLER
                                                                     United States District Judge